## W. R. PICKERING LUMBER CO. v. BUSSEY.
### (No. 1503.)

Court of Civil Appeals of Texas. Beaumont.
April 30, 1927.

1. **Damages ⬅111—Measure of damages for negligently burning fence is value of fence burned, not cost of new fence.**

Measure of damages for negligent burning of fence is value of fence burned, not cost of material and labor in fence built to replace it.

2. **Appeal and error ⬅1040(10)—Error in overruling exception to measure of damages pleaded held not cured by judgment for less than sum prayed, but more than loss sustained.**

Error in overruling exception to petition pleading cost of new fence as measure of damages for negligent burning of fence *held* not cured by judgment for less than sum prayed, but awarding cost of new fence, which exceeded value of fence burned.

3. **Damages ⬅111—Judgment for cost of new wire fence, inclosing more land than old pine fence negligently burned, held erroneous.**

Judgment awarding plaintiff cost of building new wire fence, inclosing about 60 acres

of land, in place. of negligently burned pine rail and pole fence, inclosing only 40 or 45 acres, *held* erroneous as exceeding value of fence burned.

**4. Appeal and error ⬤⟳713.(3)—Bill of exception to overruling of exception to petition is insufficient.**

Bill of exception is insufficient to support assignment of error in overruling exception to petition.

**5. Master and servant ⬤⟳305—Master is responsible for servant's acts in course of employment, though he exceeded authority or disobeyed instructions.**

Master is responsible for servant's acts in course of his employment or line of duty with view of furthering master's business, though he exceeded his authority or disobeyed instructions.

Appeal from Shelby County Court; F. C. Powell, Judge.

Action by H. L. Bussey against the W. R. Pickering Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Davis & Davis, of Center, for appellant.

Sanders & Sanders and E. J. McLeroy, all of Center, for appellee.

WALKER, J. On allegations that appellant negligently burned his fence, appellee instituted this suit in the justice court on the following account, as the cost of a new fence replacing the old one:

**Plaintiff's Demand.**

H. L. Bussey in Account with W. R. Pickering Lumber Co., Dr.

| | |
|---|---|
| 526 post ....................................... | $ 26 30 |
| Time of defendant in repairing fence......... | 7 50 |
| One hired man's time......................... | 7 50 |
| Staples ...................................... | 1 50 |
| Cost of 14 spools of wire and hauling........ | 62 30 |
| Damage to 3 spools of net wire and 2 spools of barb wire.................................. | 19 85 |
| Attorney's fees.............................. | 20 00 |
| Total of which is............................ | $144 95 |

[1] In both justice and county courts appellant excepted to the measure of damages pleaded by appellee, presenting the proposition that the proper measure of damages·was the value of the fence burned, and not the cost of the new fence built to replace the burned fence. Though this exception was overruled, appellant urged the same objection to appellee's evidence and the court's charge to the jury, all of which were overruled.

Upon the jury's verdict in the county court, judgment was entered in favor of appellee for $100.

The special exception to appellee's petition should have been sustained. His measure of damages was the value of the fence burned, and not the cost of the material and labor in the new fence. Railway Company v. Wallace, 14 Tex. Civ. App. 386, 37 S. W. 382; Inter-national & G. N. R. Co. v. McIver (Tex. Civ. App.) 40 S. W. 438; Texas & N. O. R. Co. v. Jeff Chaison Town Site Co. (Tex. Civ. App.) 290 S. W. 892.

[2] The error in overruling the exception was not cured by the judgment. J. F. Williams, a witness for appellee, testified:

"The fence was a pine rail and a pine pole fence. I think there were poles in places. The fence wasn't right new when I went there. * * * I don't know whether the entire fence was in that state of decay which would have made it practically worthless from a standpoint of picking it up and moving it anywhere else. I never did figure on moving it. It had been turning the stock after we put up the guard wire all around it; yes. The rail fence had just squashed down to two or three feet. Yes; it had gone plum down pretty low in places. Yes; the thing that caused it to get low was decay. That was the condition all around, except around the little new ground."

Appellee testified:

"I know very little about the fire which burned my fence in March, except what I seen. It must to have burned six or seven hundred yards around to where Wilburn lived. Part of my fence was good, and part of it was sorry. Some next to the road around the fresh field was good. We had two wires stretched around it. I had a cowproof and a hogproof fence— that is, what I would call cow and hog proof. I built a wire fence. I set 526 posts, which cost me $26.30; I wrote Mr. Davis about building my fence back. I agreed to build the fence back if he would pay for it. I paid Him Wilburn $26.30 for 526 post. That was the price we agreed on. Yes; I spent $7.50 worth of time in building the fence, and paid $7.50 for another hand's time. I paid $1.50 for staples. Yes; that is a reasonable charge. I bought 14 spools of wire, which cost, including my charge for hauling, $62.30. Yes; the $19.85 for damages to three spools of net wire and two spools of barbed wire is right. Some of that wire was burnt. Yes; the total is $124.95, that is how much it cost me in buying the wire, and all, including the damage to the wire. I had to build a fence to make a crop. I think I had started plowing. Yes; I charged for $20 attorney's fees, for bringing the suit, because they failed to pay me. Yes; that is a reasonable charge, very cheap, I think. That makes a total of $144.95. * * *

"The fence that I did build was not at all where the previous fence had been. I built a new fence. I begun at the residence, followed the west line of my land to the highway, then ran eastward with the highway to the northeast corner, then southward with my east line to within about 200 yards of the southeast corner, then westward to a point just south of the residence. I was up against the old fence about 200 yards, and from there I followed the line all the way around north and east, but didn't go to the south line. I turned west north of the Griffin corral. Yes; I did build a new fence all the way around my place. The new fence embraced about 60 acres, and the old embraced about 40 or 45 acres. The reason I built a new fence along where the old one hadn't

burned was because the rest of it was new, and I thought I might as well build the other new. The real facts were that part of the fence wasn't any account, while part of it was. Yes; I put at least four spools of the old wire back in the fence, and they are in the fence now, if somebody hasn't taken them out. I had the boy to roll up the hog wire there, and put it up. I can't say, as a matter of fact, if the fire hadn't burned my fence, that I would have had to put up new fence. That is a question I can't answer. I don't know what I would have done. I would have had to fixed the east string. I guess the Pickering bunch burnt it out. No; I didn't see it burn. I believe the company burned that up, but didn't see them. * * *

"The amount that I ask for is the value of the fence as it now stands around the place. It is just what it cost me. Yes; that includes the whole fence as now located all around the place."

[3] From this evidence it appears that appellee proved his case as he had pleaded it, and was awarded the cost of a new wire fence inclosing about 60 acres of land, while his old fence inclosed only 40 or 45 acres. Appellee was not entitled to recover beyond damages actually suffered. The mere statement of his evidence shows that the amount awarded exceeded his loss. Upon another trial he should be required to plead a cause of action within the rules. His evidence should be confined to the issue raised by his pleadings, and by proper charges the jury should be instructed as to the proper measure of damages.

[4] While the court's ruling on the exception to appellee's petition is shown only by bill of exception, which is insufficient to support the assignment (Newton County v. Ellis [Tex. Civ. App.] 285 S. W. 691; Cohen v. Hill [Tex. Civ. App.] 286 S. W. 661), the same proposition is properly assigned against the evidence and the court's charge. It was necessary to discuss the court's ruling on the exception in order that the error might not be repeated on another trial.

[5] If on another trial the evidence raises the issue that the fire was not caused by the negligence of appellant's servants while in the course of their employment, that issue should be submitted to the jury. The rule was recently restated as follows by Mr. Justice O'Quinn, speaking for this court, in Friend-Rowe Motor Co. v. Ricci, 293 S. W. 851, on file in said cause, not yet [officially] reported:

"The rule is that the master is responsible for the acts of his servant done within the scope of his agency; that is in the course of his employment or in the line of his duty with a view of furtherance of his master's business and not done for a purpose personal to himself. The fact that the servant in committing the act may have exceeded his authority, or even disobeyed his instructions, does not alter the rule. [International & G. N.] Ry. [Co.] v. Anderson, 82 Tex. 516, 520, 17 S. W. 1039, 27

Am. St. Rep. 902; Wright v. Maddox (Tex. Civ. App.) 288 S. W. 564."

Within the rule thus stated, the issue should be submitted to the jury.

For the errors above pointed out, the judgment of the trial court is reversed and the cause remanded for another trial.